# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THOMAS BARWIN,                )

                              )

          Plaintiff,         )

                              )     No. 14-cv-06046

     v.                      )

                              )     Judge Andrea R. Wood

VILLAGE OF OAK PARK,     )

                              )

          Defendant.      )

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Barwin has sued Defendant Village of Oak Park ("Oak Park"), his former employer, alleging breach of contract and promissory estoppel. Before the Court is Oak Park's motion to dismiss both claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") (Dkt. No. 9). For the reasons stated below, the Court finds that Barwin has failed to state a claim with respect to either count and thus grants the Motion.

## BACKGROUND

As set forth in the Complaint,[1] Barwin served as the Village Manager for Oak Park from mid-2006 through early 2012. (Compl. ¶ 1, Dkt. No. 1.) Barwin was recruited for the position in connection with a nationwide search conducted by Oak Park in 2006. (*Id.* ¶ 10.) Oak Park offered Barwin a competitive salary and a relocation package. (*Id.*) In addition, in response to an inquiry from Barwin, Oak Park told Barwin that he would be able to purchase out-of-state pension credits to meet the eight-year vesting requirement necessary to receive a pension from the Illinois Municipal Retirement Fund ("IMRF"). (*Id.*) Thus, even if Barwin worked fewer than eight years

---

[1] For purposes of deciding the Motion, the Court accepts the allegations of the Complaint as true and draws all permissible inferences in Barwin's favor. *See, e.g.*, *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

as Village Manager for Oak Park, he could purchase enough time so that his IMRF pension would nonetheless vest. (*Id.*)

Around late June 2006, Barwin and Oak Park executed a Village Manager Employment Agreement ("Employment Agreement"), which was an at-will employment contract that set forth the terms of Barwin's employment. (*Id.* ¶ 11.) Among other things, the Employment Agreement included procedures for terminating Barwin's employment and provided that he would be entitled to a severance package if he were terminated for reasons other than for cause. (*Id.* ¶¶ 11, 13; Compl. Ex. A at Secs. 9-10, Dkt. No. 1-1.) In addition to termination procedures, the Employment Agreement also detailed procedures for Oak Park to conduct an annual performance evaluation of Barwin, including that both parties were to be afforded an opportunity to: (1) prepare a written evaluation, (2) meet and discuss the evaluation, and (3) present a written summary of the evaluation results. (Compl. ¶ 12, Dkt. No. 1; Compl. Ex. A at Sec. 12, Dkt. No. 1-1.) Any adjustment in Barwin's base salary as a result of the performance review would be effective as of his anniversary date. (Compl. Ex. A at Sec. 12, Dkt. No. 1-1.)

The Employment Agreement did not mention the previously discussed purchase of out-of-state pension credits. It did, however, contain an integration clause, stating that "[t]his Agreement sets forth and establishes the entire understanding between [Oak Park] and [Barwin] relating to the employment of [Barwin] by [Oak Park.] Any prior discussions or representations by or between [Oak Park] and [Barwin] not specifically stated in this Agreement are rendered null and void by this Agreement." (*Id.* at Sec. 21(A).) The Agreement further states that "[Oak Park] and [Barwin], by mutual and written agreement, may amend any provision of this Agreement during the life of the Agreement." (*Id.*)

Oak Park's representations that Barwin would be able to purchase out-of-state pension credits continued after he started in the Village Manager position. (Compl. ¶ 17, Dkt. No. 1.) Based on those representations, Barwin forewent pursuing other employment opportunities and deferred his purchase of pension credits. (*Id.* ¶ 17.) He deferred purchasing the out-of-state pension credits because each month that he continued to work as Village Manager was one less month for which he would have to purchase pension credits in order for his benefits to vest. (*Id.*)

Barwin achieved many successes during his tenure as Village Manager. (*Id.* ¶¶ 15-16.) Nonetheless, following Barwin's 2010 performance evaluation, the Board of Trustees of Oak Park ("Board") expressed concern regarding a few areas under his supervision. (*Id.* ¶ 18.) During his subsequent mid-year review, the Board did not indicate that Barwin's performance was deficient or that the Board was losing confidence in him. (*Id.* ¶ 19.) When it came time for his 2011 performance evaluation, however, the Board held a closed meeting to discuss his evaluation and ultimately voted to end his employment. (*Id.* ¶¶ 20, 22.) The next day, Barwin met with the Village President and one of the Trustees, and was informed that the Board had authorized a separation package if he would agree to resign within 48 hours and sign a release of claims against Oak Park. (*Id.* ¶ 23.) Barwin was further informed that the Board would vote to terminate him for cause if he did not resign. (*Id.*) In addition, Barwin was provided with scoring sheets from his performance review and asked whether he wanted to discuss them. (*Id.* ¶ 24.) The Board's decision surprised Barwin, but he ultimately decided to accept the Board's offer to resign. (*Id.* ¶ 25.) Following his resignation, Barwin requested that Oak Park allow him to purchase out-of-state pension credits, but Oak Park denied his request.[2] (*Id.* ¶ 26.)

---

[2] Oak Park does not appear to dispute whether Barwin would have been eligible to purchase out-of-state pension credits following his resignation had Oak Park approved his request.

Barwin has filed a two-count Complaint alleging (1) breach of the Employment Agreement and (2) promissory estoppel with respect to Oak Park's representations regarding the purchase of out-of-state pension credits. Specifically, Barwin claims that, in violation of the Employment Agreement, he was not given the opportunity to meet with the full Board to discuss his evaluation, he was not provided a complete written summary of the evaluation results, and he was not given a chance to prepare a written response to the evaluation. (*Id.* ¶ 27.) He further asserts that had he been given the opportunity to defend his performance or respond to concerns, he might have been able to convince the Board to keep him on as Village Manager. (*Id.* ¶ 28.) Barwin alleges that as a result of Oak Park's breach of the Employment Agreement and failure to honor its representations regarding out-of-state pension credits, he has suffered damage to his reputation, lost potential professional opportunities, lost earnings, lost pension benefits and future income through the IMRF, and suffered emotional harm and embarrassment. (*Id.* ¶ 29.)

## DISCUSSION

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). While the Complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Id.* at 555. The plaintiff must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

relief." *Id*. In addition, "although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *Id*. Furthermore, "a party may plead itself out of court by either including factual allegations that establish an impenetrable defense to its claims or by attaching exhibits that establish the same." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006).

## I.     Count I – Breach of Contract

To establish his claim for breach of contract under Illinois law,[3] Barwin must prove: (1) the existence of a valid and enforceable contract, (2) that he substantially performed under the contract, (3) that Oak Park breached the contract, and (4) that Oak Park's breach caused him to suffer damages. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010), *as amended* (Dec. 16, 2010). In construing contracts, courts attempt to determine the parties' intent by giving unambiguous terms their clear and ordinary meaning. *Id*.

Here, as Barwin admits, his employment was at-will and he was provided a severance package as a result of his termination as prescribed by the Employment Agreement. Nonetheless, he claims that, contrary to the Employment Agreement, he "was not given the opportunity to meet with the full Oak Park Board and discuss his evaluation or any areas of concern that may have been identified therein, he was not provided with a complete written summary of the evaluation results, and he did not have the chance to prepare a written response to the evaluation." (Compl. ¶ 27, Dkt. No. 11.) He further argues that had he been given the opportunity to do so, "[i]t is not unreasonable to think that . . . [he] would have been able to respond to [Oak Park's] satisfaction and convince the Board members to keep him on as Village Manager." (*Id.* ¶ 28.)

[3] The Complaint invokes the Court's diversity jurisdiction. As such, the Court applies Illinois substantive law in its consideration of Barwin's claims. *Berrey v. Travelers Indem. Co. of Am.*, 770 F.3d 591, 594 (7th Cir. 2014).

The Employment Agreement does not state that Barwin was at any time to be given an opportunity to meet with the full Board, however. Nor does it state that he had to be provided a complete written summary of evaluation results or given a chance to prepare a written response to the evaluation, let alone that these were prerequisites for his termination. Instead, the Employment Agreement simply states that the evaluation process must provide him with an opportunity to prepare a written evaluation, meet and discuss the evaluation, and present a written summary of the evaluation results. According to Barwin's own account, these requirements were met. (Compl. ¶¶ 23-24, Dkt. No. 11.) Furthermore, the plain language of the Employment Agreement makes clear that the performance evaluation procedure was not meant to be a necessary step in the termination process. In fact, the termination procedures and evaluation procedures are established as separate and distinct processes. The evaluation was tied to adjustments to Barwin's salary only.[4]

Thus, Oak Park performed its contractual obligations and was within its rights under the Employment Agreement to terminate Barwin in the manner it did. *See Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 395-96 (7th Cir. 2003) ("Illinois law holds that parties to a contract are entitled to enforce the terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract."); *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 940 (7th Cir. 2002) ("Illinois is an at-will employment state, which means that in general an employee can be discharged at any time for any reason or none at all.").

---

[4] Under Barwin's proffered interpretation of the Employment Agreement, Oak Park would not have been able to terminate him outside of the annual performance review period. Such a result would be contrary to the terms of the contract.

Accordingly, Barwin has failed to state a claim for breach of contract and the Motion is granted with respect to Count I.[5]

## II.    Count II – Promissory Estoppel

To establish his claim based on promissory estoppel, Barwin must show that: (1) Oak Park made an unambiguous promise to him, (2) he relied on that promise, (3) his reliance was expected and foreseeable by Oak Park, and (4) he relied on the promise to his detriment. *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005) (quoting *Quake Constr., Inc. v. Am. Airlines, Inc.,* 141 Ill.2d 281, 309-10, 565 N.E.2d 990, 1004 (Ill. 1990)). A promissory estoppel claim requires all of the elements of a contract aside from consideration. *Id.* at 677. Promissory estoppel is not meant to allow a party to have a "second bite at the apple in the event that it fails to prove a breach of contract." *Id.* (citations omitted). Moreover, in Illinois, to invoke the doctrine of promissory estoppel, "the promisee's reliance must be reasonable and justifiable." *Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1223 (7th Cir. 1991) (quoting *Vincent DiVito, Inc. v. Vollmar Clay Prods. Co.*, 179 Ill. App. 3d 325, 327-28, 534 N.E.2d 575, 577 (Ill. App. Ct. 1989)).

In this case, there is a contract governing Barwin's employment by Oak Park—the Employment Agreement. While Barwin's second claim alleges promissory estoppel (rather than breach of contract), the governing contract is nonetheless relevant to determining whether he can assert this claim, including whether his purported reliance on any alleged oral promises was reasonable. There is no provision in the Employment Agreement regarding the alleged promise to allow the purchase of out-of-state pension credits. Furthermore, the Employment Agreement contains an integration clause that declares the contract to be the complete and final agreement between the parties, with any previous negotiations deemed superseded by the final writing.

---

[5] Because Barwin has failed to state a claim for breach of the Employment Agreement, there is no need to address Oak Park's argument that he has failed to allege recoverable damages.

While the agreement allows modifications "by mutual and written agreement," Barwin has not alleged any such modification regarding out-of-state pension credits.

Here, Barwin is precluded from relying on promissory estoppel regarding alleged representations by Oak Park about the purchase of out-of-state pension credits because there was an enforceable contract governing the relationship between the parties.[6] *Prentice v. UDC Advisory Servs., Inc.*, 271 Ill. App. 3d 505, 512, 648 N.E.2d 146, 150 (Ill. App. Ct. 1995) ("[O]nce it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties and therefore consideration exists, then a party may no longer recover under the theory of promissory estoppel."); *see also All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999) ("When there is an express contract governing the relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill.").

Moreover, with respect to oral promises made prior to the execution of the Employment Agreement, Barwin's claim is barred by the terms of the contract itself. Under Illinois law, "'where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence.' . . . [O]nly the four corners of an integrated contract are properly considered when interpreting a contract." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 636-37 (7th Cir. 2007) (quoting *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 464, 706 N.E.2d 882, 885 (Ill. 1999)). Thus, Barwin's promissory estoppel claim regarding oral

---

[6] Notably, the actions Barwin took that he alleges demonstrate his detrimental reliance—*i.e.*, his continued service as Village Manager and election not to purchase out-of-state pension credits—are the same as performance under the written contract, which required him to perform his duties as Village Manager and did not provide for him to purchase pension credits. *Prentice*, 271 Ill. App. 3d at 511, 648 N.E.2d at 150 ("[I]f a party's performance under a written contract is the same performance which satisfies the requirement of detrimental reliance, then that party is barred from seeking redress under the doctrine of promissory estoppel.")

promises made prior to the execution of the Employment Agreement (yet not included in the contract) is barred by the terms of the contract. *Id.*; *Downs v. Rosenthal Collins Grp., L.L.C.*, 963 N.E.2d 282, 290 (Ill. App. Ct. 2011) (finding that where the parties included an integration clause in the employment agreement, such that it superseded any and all prior contracts, oral or written, and any changes to the agreements or waivers thereof had to be in writing, plaintiff's testimony regarding the negotiations of the terms of his employment was extrinsic evidence with no relevance).

Barwin's claim with respect to oral promises regarding the purchase of pension credits made after the execution of the Employment Agreement also fails, as Barwin has not sufficiently alleged that his reliance on any such promises was reasonable. "Although reliance is normally a question of fact, it can be determined as a matter of law when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Barwin was an experienced public servant who was sophisticated enough and sufficiently concerned about pension credits to have inquired about his ability to purchase such credits before he agreed to serve as Oak Park's Village Manager. In light of the absence of a provision in the Employment Agreement allowing him to purchase pension credits and the inclusion of a provision that explicitly states that all amendments must be by mutual written agreement, it was not reasonable for Barwin to rely on subsequent oral promises regarding the purchase of pension credits. "A borrower is not justified in relying on representations outside of or contrary to the contract he or she signs where the signer is aware of the nature of the contract and had a full opportunity to read the contract. A party cannot close his eyes to the contents of a document and then claim that the other party committed fraud merely because it followed this contract." *N. Trust Co. v. VIII S.*

*Michigan Assocs.*, 276 Ill. App. 3d 355, 365, 657 N.E.2d 1095, 1103 (Ill. App. Ct. 1995) (internal quotation marks and citations omitted); *cf. Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 730 (7th Cir. 1999) (plaintiff could not "stake its claim on any subsequent oral agreements, because the contracts each provide that their terms 'cannot be altered or amended except by agreement in writing signed by the duly authorized representatives of the parties hereto'"). This is particularly true in a situation where the parties to the agreement are sophisticated, as they are here. *N. Trust Co.*, 276 Ill. App. 3d at 366, 657 N.E.2d at 1103.

For these reasons, Barwin has failed to state a claim for promissory estoppel and Oak Park's Motion is granted with respect to Count II.[7]

### CONCLUSION

For the foregoing reasons, Oak Park's motion to dismiss the complaint is granted. As the terms of the Employment Agreement are clear and unambiguous and it does not appear possible that Barwin could cure his pleading deficiencies with an amended complaint, the claims are dismissed with prejudice.

ENTERED:

Dated: March 25, 2015

_____
Andrea R. Wood
United States District Judge

---

[7] Because the Court finds that Barwin has failed to plead the required elements of promissory estoppel, it need not address Oak Park's argument that Barwin's claim is barred by the Illinois Statute of Frauds.