UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS BARWIN

Plaintiff,

v.

VILLAGE OF OAK PARK,

Defendant.

No. 14 C 6046

Judge Mary M. Rowland

## MEMORANDUM OPINION & ORDER

Plaintiff Thomas Barwin ("Barwin") filed suit against the Defendant Village of Oak Park ("Oak Park"), alleging breach of contract and promissory estoppel. Before the Court is Oak Park's motion to dismiss Barwin's First Amended Complaint, and Barwin's motion to file a second amended complaint. For the following reasons, Oak Park's motion to dismiss (Dkt. 46) is granted, and Barwin's motion to file a second amended complaint (Dkt. 63) is granted.

## PROCEDURAL HISTORY

Barwin served as the Village Manager for Oak Park from mid-2006 through early 2012. (Dkt. 63-1, ¶4). In early 2012, after being informed that the Board of Trustees of Oak Park ("Board") planned to terminate him if he did not resign, Barwin accepted the Board's offer to resign and was given a severance package. (Dkt. 63-1, ¶¶ 37–38). On August 6, 2014, Barwin filed suit against Oak Park alleging (1) breach of the Village Manager Employment Agreement ("Employment Agreement") governing Barwin's employment, and (2) promissory estoppel with regards to Oak

Park's alleged representations regarding the purchase of out-of-state pension credits. (Dkt. 1).

On March 25, 2015, the district court granted Oak Park's motion to dismiss Barwin's original complaint in its entirety with prejudice. (Dkt. 19). Accepting the facts alleged in the original complaint as true, the court found that Barwin's breach of contract claim which was based on Oak Park's alleged failure to comply with the evaluation process was (1) not violated and (2) Oak Park "performed its contractual obligations and was within its rights under the Employment Agreement to terminate Barwin in the manner it did." (Dkt. 19 at 6). In his original complaint Barwin challenged his inability to purchase pension credits under a theory of promissory estoppel. (Dkt. 1 at 12–13). The court found Barwin failed to state a claim for the pension benefits under promissory estoppel because the Employment Agreement did not contain any provision to allow the purchase of pension credits and "the Employment Agreement contains an integration clause that declares the contract to be the complete and final agreement between the parties, with any previous negotiations deemed superseded by the final writing." (Dkt. 19 at 7). The court found that accepting the oral promises as true, Barwin failed to state a claim for promissory estoppel under Illinois law which prohibits consideration of oral promises made prior to the execution of a contract when the contract contains an integration clause. (*Id.* at 8). The court noted that Barwin, an experienced municipal manager, was sophisticated and was assumed to understand the terms of the Employment Agreement,

including the integration clause. (*Id*. at 9–10). Finding no way to cure these deficits, the court dismissed the case with prejudice.

Barwin timely filed a motion for reconsideration and for leave to amend the complaint on April 22, 2015. (Dkt. 21). On August 24, 2018, the district court denied Barwin's motion for reconsideration but granted Barwin's motion to amend his complaint and allowed him to proceed on his new claim that Oak Park breached the Employment Agreement "by interfering with Barwin's expectations under the agreement . . . that Oak Park would not terminate his employment to prevent him from retiring and receiving [his retirement] benefits." (Dkt. 39 at 8). The court found "Barwin's newly-proffered theory of liability tenuous, given the alleged concerns about his performance acknowledged in his original complaint . . . and that fact that no such theory has been raised by Barwin before (even though it could have been)." (*Id*. at 9.) However, the court found the amendment was minimally prejudicial to Oak Park and was not futile. *Id*.

Barwin filed his first amended complaint on September 17, 2018. (Dkt. 44). On October 23, 2018, Oak Park filed a motion to dismiss the amended complaint.[1] On May 7, 2019, Barwin filed a motion for leave to file a second amended complaint based in part on newly discovered evidence obtained during discovery. (Dkt. 46). The case was reassigned to this Court on August 22, 2019. (Dkt. 80).

Before the Court are Oak Park's motion to dismiss the first amended complaint and Barwin's motion to file a second amended complaint.

---

[1] The district court denied Oak Park's motion to stay discovery pending resolution of its motion to dismiss the first amended complaint, (dkt. 52), so discovery is substantially complete.

## MOTION TO DISMISS

**A. Factual Allegations**:

The following facts are alleged in Barwin's First Amended Complaint and are presumed true for the purpose of resolving the pending motion to dismiss. Barwin served as the Village Manager for Oak Park from mid-2006 through early 2012. (Dkt. 44, ¶3). He was recruited for this position in 2006 when he was working as City Manager in Michigan. (Dkt. 44, ¶1). He was concerned about leaving his position as City Manager "because of the impact his departure would have on his retirement benefits." (*Id.*).

On June 29, 2006, Barwin and Oak Park executed the Village Manager Employment Agreement (the "Agreement"), which was an at-will employment contract setting forth the terms of Barwin's employment, including compensation and benefits. (Dkt. 44, ¶15; Dkt. 44-1). Regarding retirement benefits, Section 7A of the Agreement provided that Barwin was required to become a member of the Illinois Municipal Retirement Fund ("IMRF") upon commencing employment, and both Barwin and Oak Park were responsible for making IMRF required contributions. (Dkt. 44, ¶2; Dkt. 44-1 at 3). The Agreement also included procedures for terminating Barwin's employment and providing that he would be entitled to a severance package if he were terminated for reasons other than cause. (Dkt. 44-1 at 4–5). Additionally, the Agreement specified procedures for Oak Park to conduct an annual performance evaluation of Barwin, including that both parties were to be afforded an opportunity to: (1) prepare a written evaluation, (2) meet and discuss the

evaluation, and (3) present a written summary of the evaluation results. (Dkt. 44, ¶19; Dkt 44-1 at 5).

From mid-2006 through early 2012, Barwin achieved many successes as Village Manager of Oak Park and faithfully made his IMRF-required contributions. (Dkt. 44, ¶¶3, 17–18). Every year from 2007 through 2011, the Board followed an annual evaluation process whereby: (1) Barwin first prepared a self-evaluation which was presented to the full Board; (2) each Board member then prepared an evaluation of Barwin which was summarized and provided to him; (3) Barwin next met with the full Board to discuss the feedback from the Board; and (4) Barwin then received a final performance evaluation which was used to determine employment actions including salary increases. (Dkt. 44 at ¶20). The amended complaint alleges that in 2012, when it came time to give Barwin his review for 2011, the Board deviated from the procedures it had followed from 2007-2011 and held a closed meeting where the Board discussed Barwin's performance and then decided to terminate his employment at the end of the meeting. (*Id.* at ¶6, 21–22). The Board withdrew an invitation for Barwin to attend this meeting. (*Id.* at ¶22). The Board's decision to terminate Barwin came shortly after concerns were expressed in the meeting that Barwin would retire in 2014 and receive pension benefits. One member of the Board stated on the record that Barwin "can't" retire and collect his retirement benefits, indicating that Oak Park "can't afford it." (*Id.* at ¶23). The amended complaint also alleges that on numerous prior occasions when discussing hiring decisions with Barwin, David Pope ("Pope"), the President of the Board of the Village expressed

concerns about payment of pension benefits, stating that adding new employees would adversely impact Oak Park's retirement financial obligations. (*Id.*).

On February 14, 2012, the day after the Board's closed meeting, Barwin met with Pope and one of the Trustees, and was informed that the Board had authorized a separation package if he would agree to resign within 48 hours and sign a release of claims against Oak Park. (Dkt. 44 at ¶25). He was further advised that the Board would publicly vote to terminate him for cause the following Monday if he did not resign. (*Id.*). Barwin was then presented scoring sheets from his performance review and asked whether he wanted to discuss them. (*Id.* at ¶26).

Since Barwin was told that he would be terminated if he did not resign, he decided that resigning his position would give him the best chance of securing future employment and mitigating his damages. (Dkt. 44 at ¶27). After his resignation, Oak Park denied Barwin's request to purchase enough out-of-state reciprocal pension system credits for his pension to vest, even though it had authorized such purchases for employees who had been employed by Oak Park in the past. (*Id.* at ¶28).

## B. Legal Standard:

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the Court accepts as true all well-pleaded facts in the Plaintiff's complaint and must "construe the complaint in the 'light most favorable

to the' plaintiff." *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875, 877 (7th Cir. 2017) (quoting *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016)). However, the Court is not "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face." *Ill. Bible Coll. Ass'n v. Anderson*, 870 F.3d 631, 636 (7th Cir. 2017), *as amended* (Oct. 5, 2017), *cert denied sub nom. Ill. Bible Coll. Ass'n v. Cross*, 138 S. Ct. 1021 (2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "While a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate. . . ." *Bell*, 835 F.3d at 738 (quoting *Iqbal*, 556 U.S. at 678).

**C. Discussion**:

In the First Amended Complaint, Barwin asserts Oak Park breached his at-will contract by terminating him because it wanted to deny him an ability to vest in his pension two and half years later. Oak Park argues such a factual scenario, assuming it is true, does not allege a violation of the implied covenant of good faith and fair dealing as required. (Dkt. 47). The Court agrees.

To state a cause of action for breach of contract under Illinois law,[2] a plaintiff must plead: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) a breach of the subject contract by the defendant; and (4) that the defendant's breach resulted in damages." *McCleary v. Wells Fargo Sec., L.L.C.*, 2015 IL App (1st) 141287, ¶ 19, 29 N.E.3d 1087, 1093. Contracts are construed by giving unambiguous terms their clear and ordinary meaning when attempting to determine the parties' intent. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010), *as amended* (Dec. 16, 2010). Courts read the document as a whole and do not look at any single contract provision in isolation. *Id.*

"In Illinois, a covenant of good faith and fair dealing is implied in every contract absent express disavowal." *Interim Health Care of N. Illinois, Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 884 (7th Cir. 2000). The purpose of this duty "is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract." *RBS Citizens, National Ass'n v. RTG–Oak Lawn, LLC,* 407 Ill.App.3d 183, 191, 347 Ill.Dec. 908, 943 N.E.2d 198 (2011). Disputes involving good faith performance typically arise when one party is given broad discretion in performance under the contract, "and the other party must hope the discretion is exercised fairly." *Interim Health Care of N. Ill., Inc.,* 225 F.3d at 884. "The duty of good faith and fair dealing is a limitation on the exercise of that discretion, requiring the party vested with

---

[2] In this case based on diversity jurisdiction, the Court applies Illinois substantive law. *Berry v. Travelers Indem. Co. of Am.*, 770 F.3d 591, 594 (7th Cir. 2014).

discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations." *Gore v. Indiana Ins. Co.*, 376 Ill. App. 3d 282, 286, 876 N.E.2d 156, 161–62 (2007).

Under Illinois law, even in an at-will employment context, an employer's discretion in terminating an employee "is still limited by the reasonable expectations of the parties." *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 674 (7th Cir. 2013). Specifically, "[w]here a party acts with improper motive, be it a desire to extricate himself from a contractual obligation by refusing to bring about a condition precedent or a desire to deprive an employee of reasonably anticipated benefits through termination, that party is exercising contractual discretion in a manner inconsistent with the reasonable expectations of the parties and therefore is acting in bad faith." *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972, 990–91, 466 N.E.2d 958, 972 (1984). Illinois courts have recognized that the implied covenant of good faith can "limit an employer's otherwise unrestricted discretion in terminating an at will employment contract," when the employer is "inspired by an improper motive, such as a desire to deprive the employee of health or pension benefits, and therefore the termination was in bad faith." *Id.* (collecting cases); *see also LaScola v. U.S. Sprint Commc'ns,* 946 F.2d 559, 566 (7th Cir.1991) ("We recognize, as noted in *Gordon,* that '[t]he law seems fairly clear that an employee at will may not be deprived of commissions (in large part 'earned' prior to separating from the employer) by a discharge made in bad faith and intended to deprive the employee of the commissions.' ") (quoting *Gordon v. Matthew Bender & Co., Inc.,* 562 F.Supp. 1286, 1297 (N.D.Ill.1983)); *Jordan*

*v. Duff and Phelps, Inc.,* 815 F.2d 429, 438 (7th Cir.1987) ("[N]o one . . . doubts that an avowedly opportunistic discharge is a breach of contract, although the employment is at-will.").

Here, Barwin alleges that Oak Park breached the at-will Employment Agreement by violating the implied covenant of good faith and fair dealing when Oak Park terminated Barwin "contrary to reasonable expectations . . . that [Oak Park] would honor his Agreement and act in good faith as it concerned the agreement he reached with [Oak Park] about the benefits he would receive if he retired in 2014 or later." (Dkt. 44 at 10). To support these allegations, Barwin asserts that (1) the Employment Agreement contained "a requirement that upon commencement he become a member of the IMRF and that both he and [Oak Park] make specific contributions to IMRF as detailed in his [Employment Agreement]," (dkt. 44 at ¶2); (2) at the meeting where the Board discussed his termination, "the Board expressed concerns about Mr. Barwin receiving the retirement benefits he would be due under his Agreement if he remained employed for eight years, one specifically stating that he 'can't' because [Oak Park] 'can't afford it,'" (*id.* at ¶5); (3) Pope expressed concerns to Barwin "numerous times in the past" about payment of pension benefits to Oak Park employees, (*id.* at ¶23); and (4) Oak Park refused to allow Barwin to purchase the remaining reciprocal pension system credits he would need for his pension to vest. (*id.* at ¶7); (*see* Dkt. 53 at 5).

Oak Park argues that the first amended complaint should be dismissed because "Barwin's separation, which occurred over 2 and a half years before he had

worked a sufficient number of years for his pension to vest, is not 'avowedly opportunistic' behavior;" nor is it contrary to the "reasonable expectations" of Barwin and therefore cannot support a cause of action. (Dkt. 47 at 2). The Court agrees.

While it is true that under Illinois law even at-will employment contracts are "limited by the reasonable expectations of the parties," *Wilson*, 729 F.3d at 674, the Court finds that Barwin cannot plausibly allege that he had a reasonable expectation to be employed for two and a half more years until his pension would have vested. The only provision Barwin refers to in the Employment Agreement related to retirement benefits is Section 7A. (*See* Dkt. 44, ¶2; Dkt. 44-1 at 3). This provision provides that Oak Park is responsible for making IMRF required contributions during Barwin's employment. Nothing in this provision guarantees Barwin an IMRF pension or requires Oak Park to employ Barwin until his pension vests. *See Criscione v. Sears, Roebuck & Co.,* 66 Ill. App. 3d 664, 668–69, 384 N.E.2d 91, 94 (1978) (finding no plausible claim under the implied covenant of good faith where "Plaintiff's complaint alleges only that pension benefits had accrued during 10 years at Sears and that the benefits were lost as a result of his dismissal. There is no allegation regarding agreements pertaining to pension benefits or that his rights to the benefits had vested."); *Musso v. Excellence in Motivation, Inc.*, No. 10 C 3236, 2010 WL 3385452, at *2–3 (N.D. Ill. Aug. 24, 2010) (dismissing claim under the implied covenant of good faith, stating "without any clear assertion of what plaintiff believes he is owed, or factual allegations suggesting that he had already earned his entitlement to that amount, plaintiff has not raised his right to relief 'above the

speculative level.'"); *cf. Hinkens v. CA, Inc.*, No. 17-CV-910, 2018 WL 2299227, at
*4–5 (N.D. Ill. May 21, 2018) (in a summary judgment context, finding "it was pa-
tently unreasonable for [plaintiff] to expect that Defendant would continue employ-
ing him (as at-will employee) indefinitely until the Ensono transaction closed.").

Barwin's argument that Oak Park violated the implied covenant by terminat-
ing him with the "improper motive" to deny him of pension benefits also fails. Bar-
win correctly notes that Illinois courts have recognized that the implied covenant of
good faith can be violated when the employer is "inspired by an improper motive . . .
to deprive the employee of . . . pension benefits, and therefore the termination was
in bad faith." *Dayan*, 125 Ill. App. 3d 972, 990–91. But the cases Barwin cites, *LaS-
cola* and *Wilson*, are readily distinguishable from the allegations presented here. In
*LaScola*, the Seventh Circuit noted that "[t]he law seems fairly clear that an em-
ployee at will may not be deprived of commissions (in large part 'earned' prior to
separating from the employer) by a discharge made in bad faith and intended to de-
prive the employee of the commissions." *LaScola*, 946 F.2d at 566 (quoting *Gordon*,
562 F. Supp. at 1297). The court explained that "a cause of action for a breach of
good faith may exist when it is 'predicated on a contract right with independent va-
lidity,' that being the 'right to receive commissions for work performed.'" *Id.* The
court found that plaintiff's discharge did not deprive him of commissions because he
had not yet earned the commissions. *Id.* Barwin argues he earned his pension be-
cause "[e]ach day that [he] worked he was one day closer to vesting in his pension
plan and those days served to establish the pension benefits were earned through

not yet vested." (Dkt. 53 at 6). But Barwin cites to no convincing authority to support this proposition and seems to misapprehend the meaning of the term "vest". He only cites *Camillo,* which addresses severance (not pension) pay, noting that Illinois courts have "held that an employee earns severance pay, another form of compensation in part each week that he or she works." *Camillo v. Wal-Mart Stores, Inc.,* 221 Ill. App. 3d 614, 620–21, 582 N.E.2d 729, 733 (1991). Here, there is no contract language indicating that Barwin is entitled to his pension two and a half years before it vests. Further, the Illinois employment contract cases referenced in *LaScola* do not help Barwin given that "in every case, the employee failed either to properly plead or to prove that the employer had acted in bad faith or out of an improper motive." *LaScola*, 946 F.2d at 566.

*Wilson* also is readily distinguishable. The case did not involve an at-will employment contract; rather, it involved defendant's discretion to refuse to pay plaintiff "unearned bonuses." The court found that plaintiff plausibly alleged a claim under the implied covenant that defendant exercised its discretion in a manner contrary to the reasonable expectation of the parties where the bonus plan was terminated early to avoid the three conditions needed for plaintiff to earn a bonus on a student he had already recruited. *Wilson,* 729 F.3d at 675. This is not the situation here.

Accordingly, the Court grants Oak Park's motion to dismiss the first amended complaint.

## MOTION TO AMEND

In his proposed Second Amended Complaint, Barwin seeks to add new factual allegations and a new, his third, theory under his breach of contract claim, namely that Oak Park's "arbitrary and capricious decision to halt its long practice of approving the purchase of pension credits," (dkt. 75 at 5), violated the implied covenant of good faith by interfering with Barwin's reasonable expectations under the Agreement that he would receive the "highest level of benefits" enjoyed by other department heads as provided "by practice." (Dkt. 63-1, ¶¶3, 9, 38, 46).

## A. Factual Allegations:

To support this theory, Barwin alleges: (1) Section 19 of the Agreement included a provision that Barwin would be entitled to the "highest level of benefits" enjoyed by other department heads or equivalent level employees "as provided in the Oak Park Village Code, Personnel Rules and Regulations or by practice" (dkt. 63-1, ¶3; Dkt. 1-1 at 7); (2) David Pope ("Pope"), the President of the Board of the Village, informed Barwin that if he did not attain enough service years to vest in a pension, he could purchase reciprocal pension credits to meet the vesting requirement necessary to receive a pension from the IMRF, (dkt. 63-1, ¶2); (3) Pope also informed Barwin that the previous Village Manager had done so; and Barwin confirmed that this information was accurate through his own research, (*id.*); and (4) following his resignation, Oak Park denied Barwin's request to purchase enough out-of-state reciprocal pension system credits for his pension to vest, despite having granted such requests for prior Oak Park Village Managers, (*id.* at ¶38).

Barwin also alleges new facts to support improper motive including: (1) Barwin received no negative feedback from any Board member following the 2010 evaluation process, and Oak Park received the results of a citizen survey towards the end of 2011 indicating a high level of satisfaction with Oak Park's performance; (dkt. 63-1 at ¶30); (2) prior to the 2012 closed meeting, which was conducted without notice, a quorum of the Personnel Committee violated the Illinois Open Meetings Act by excluding the City Clerk from the meeting, (*id.* at ¶32, 36); and (3) the Board further violated the Illinois Open Meetings Act by "directing and setting a February 14 meeting with a quorum of the Personnel Committee to meet with Mr. Barwin to advise him of the termination decision," denying the public notice of the meeting, (*id.* at ¶11).

**B. Legal Standard**:

Federal Rule of Civil Procedure 15(a)(2) governs Barwin's motion for leave to file a second amended complaint. Under this liberal standard for amending, "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). "The Supreme Court has interpreted this rule to require a district court to allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.,* 800 F.3d 343, 357–58 (7th Cir. 2015) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

**C. Discussion**:

Oak Park opposes Barwin's second motion to amend on the grounds of undue delay, undue prejudice and futility. The Court will address each argument in turn.

### 1. Undue Delay and Undue Prejudice

Oak Park first argues that Barwin unduly delayed seeking leave to amend because Barwin knew of these allegations and new theory of liability before filing the lawsuit; and, thus, he has no justifiable reason for waiting until the close of discovery to assert these allegations. (Dkt. 70 at 3). Barwin argues that the proposed amendment is based, in part, on new information learned in discovery, particularly in the deposition of the former Village Finance Director, where Barwin confirmed that Oak Park had a consistent practice of allowing its prior employees to purchase pension credits when requested. (*Id.* at 2). Barwin's counsel deposed five individuals in April 2019 and filed the motion to amend shortly thereafter based on information obtained from those depositions. (*Id.* at 3).

The Court notes with concern that Barwin could have plead this new theory under Section 9 of the Agreement earlier. However, given the unusual procedural posture of this case, with the case effectively dismissed for three years pending ruling on a motion for reconsideration, the Court will consider the second amendment. Moreover, the Seventh Circuit has indicated, "delay is an insufficient basis for denying a motion to amend unless this delay results in undue prejudice to the opposing party." *Tragarz v. Keene Corp.*, 980 F.2d 411, 432 (7th Cir. 1992) (citations omitted); *see also McCoy v. Iberdrola Renewables, Inc.,* 760 F.3d 674, 687 (7th Cir. 2014) ("The underlying concern is the prejudice to the defendant rather than simple

passage of time."). Since almost every amendment to a complaint causes some form of prejudice to the defendant such as the possibility of further discovery or a delay of the trial date; courts only deny a motion for leave to amend where the amendment would cause "undue prejudice." *Lanigan v. LaSalle Nat. Bank,* 108 F.R.D. 660, 662 (N.D. Ill. 1985). Undue prejudice occurs where the amendment "brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint and where the amendment would require expensive and time-consuming additional discovery." (*Id.*) (citations omitted). The non-moving party bears the burden of demonstrating undue prejudice. *Parker v. EMC Mortg. Corp.,* No. 11-CV-05682, 2014 WL 7205474, at *3 (N.D. Ill. Dec. 18, 2014).

Oak Park argues that Barwin's delay will cause undue prejudice because the first amended complaint and previously dismissed complaint were insufficient to put Oak Park on notice of Barwin's new theory. Specifically, Oak Park asserts that the alleged refusal to allow Barwin to purchase service credits after he resigned "was not alleged or alluded to whatsoever" in the first amended complaint. (Dkt. 70 at 4). This is inaccurate. The first amended complaint states, "despite [Oak Park]'s own prior practices, [Oak Park] denied his request [to purchase out-of-state reciprocal pension service credits], thereby depriving him of his ability to receive an Illinois pension, further evidencing its intention to prevent Mr. Barwin from receiving the benefits of his Agreement." (Dkt. 44, ¶28). While the original complaint did not specifically reference Section 19 of the Employment Agreement, it did assert that Oak

Park denied Barwin the ability to purchase pension credits. (Dkt. 1, ¶26); s*ee Xerox Fin. Servs. Life Ins. Co. v. Salomon Bros.* Inc., No. 92 C 1767, 1993 WL 78721, at *2 (N.D. Ill. Mar. 18, 1993) (finding no undue prejudice when the "amendment merely puts a slightly different spin on legal theory and conduct the amended complaint already alleges."). Moreover, Oak Park's assertion that it will be unduly prejudiced because it has "already taken Barwin's deposition and conducted discovery as to the claims and theories articulated in the First Amended Complaint" is not persuasive. Oak Park does not show that any expensive or time-consuming additional discovery will be required because of the proposed amendments.

### 2. **Futility**:

Oak Park asserts that Barwin's proposed amendment is futile because the additional facts and theories do not cure the deficiencies of the First Amended Complaint and would not survive a motion to dismiss.

An amended complaint is futile if it asserts the same facts, asserts a previously determined claim, fails to state a valid theory of liability, or could not withstand a motion to dismiss. *Villars v. Kubiatowski*, 128 F. Supp. 3d 1039, 1043 (N.D. Ill. 2015) (citing *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992)). When the basis of denial is futility, courts apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim for relief. *Naperville Smart Meter Awareness v. City of Naperville*, 114 F. Supp. 3d 606, 610–11 (N.D. Ill. 2015), *aff'd*, 900 F.3d 521 (7th Cir. 2018).

Oak Park argues that the new allegations and new theory of liability are futile because they do not show the type of "avowedly opportunistic" conduct to deprive Barwin of a contractual benefit that would support a claim for breach of an implied covenant of good faith and fair dealing. (Dkt. 70 at 5).

This is a close call. Barwin was an at-will employee. That means under Illinois law that he can be fired for any reason or no reason. As noted above, the covenant of good faith and fair dealing that is implied in every contract in Illinois is a limitation on the exercise of a party's broad discretion under a contract, "requiring the party vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations." *Gore*, 376 Ill. App. 3d 282, 286.

Under the liberal standard required by FRCP 15 and accepting the facts as plead in his second amended complaint, Barwin plausibly alleges that Oak Park violated the implied covenant of good faith and fair dealing by its "arbitrary and capricious decision to halt its long practice of approving the purchase of pension credits," (dkt. 75 at 5), thereby interfering with Barwin's reasonable expectations under the Agreement that he would receive the "highest level of benefits" enjoyed by other department heads as provided "by practice."

Barwin alleges that Section 19 of the Agreement entitled him to the "highest level of benefits" enjoyed by other department heads or equivalent level employees "by practice." (Dkt. 63-1, ¶3; Dkt. 1-1 at 7). Barwin further alleges that he was informed that it was the practice of Oak Park to allow Village Managers to purchase

reciprocal pension credits, and new information obtained in deposition testimony confirmed that previous Village Managers were allowed to do so. These allegations plausibly allege that Barwin could reasonably expect to purchase reciprocal service credits as one of the "highest level of benefits" by "practice" under the Agreement. *Cf. McCleary,* 2015 IL App (1st) 141287, ¶ 26 ("Where a plaintiff has pled that he had a reasonable expectation to a bonus from a defendant that abused its broad contractual discretion by arbitrarily withholding the bonus in a manner not reasonably anticipated by the parties at the time of contract formation, a valid cause of action has been sufficiently pled to withstand a . . . motion to dismiss."); *Shages v. MDScripts Inc.,* No. 18 CV 5395, 2019 WL 2327651, at *5 (N.D. Ill. May 31, 2019) ("Truly opportunistic behavior . . . such as contriving an 'arbitrary' excuse to avoid paying bonuses, may be actionable.") (citations omitted).

Barwin also plausibly alleges that the Board arbitrarily halted its practice of allowing Village Managers to purchase reciprocal pension credits when a Board member said that Barwin "can't" retire and collect his retirement benefits because Oak Park "can't afford it." (Dkt. 63-1, ¶3). At the pleading stage, Barwin need only allege "a plausible breach of contract theory." *Wilson*, 729 F.3d at 675–76. *Id.* The Court finds that Barwin has done that, and that his proposed second amended complaint is not futile. As such, the Court will allow Barwin to proceed on this one breach of contract theory. No further amendments to the complaint will be allowed.

## **CONCLUSION**

For the foregoing reasons, Oak Park's motion to dismiss (Dkt. 46) is granted and Barwin's motion to file an amended complaint (Dkt. 63) is granted. The Court will not allow any new amended complaints going forward.


E N T E R:

Dated: January 13, 2020

_____
MARY M. ROWLAND
United States District Judge