IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS BARWIN, | |
| Plaintiff, | |
| v. | Case No. 14-cv-6046 |
| VILLAGE OF OAK PARK, | Judge Mary M. Rowland |
| Defendant. | |

### ORDER

The parties have filed cross-motions for summary judgment. (Dkt. 123 & Dkt. 126). Plaintiff Thomas Barwin ("Barwin") alleges in his Second Amended Complaint ("SAC") that his former employer, the Village of Oak Park ("Oak Park"), breached his employment contract by refusing to grant him pension credits. (Dkt. 94, ¶¶ 41–46). Oak Park counters that Barwin was not contractually entitled to these credits. For the reasons stated below, Plaintiff's motion (Dkt. 126) is denied and Defendant's motion (Dkt. 123) is granted.

**I. Legal Standard**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the

1

evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted).

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: [courts] construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citations omitted). To do so, the Court addresses the motions separately. *See Marcatante v. City of Chi.*, 657 F.3d 433, 439 (7th Cir. 2011); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## II. Local Rule 56.1

"Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019) (citation omitted). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (citation and quotations omitted). Rule 56.1 requires, among other things, that the party opposing summary judgment provide "a response to each numbered paragraph in the moving party's statement [of facts], including, in the case

of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b). Oak Park argues that none of Barwin's Rule 56.1 statements of undisputed material fact should be considered because the only "specific references to the record" supporting those facts cite the text of the SAC and contend that Oak Park admits those allegations. Barwin argues that, because Oak Park failed to answer the SAC, it has admitted all of the facts therein and therefore those facts are undisputed for purposes of these cross-motions for summary judgment.[1] *See* Fed.R.Civ.P. 8(b)(6) ("An allegation [. . .] is admitted if a responsive pleading is required and the allegation is not denied."). The Seventh Circuit is clear that at the summary judgment stage a plaintiff cannot simply rest on their pleadings but must instead "go beyond the pleadings [. . .] to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict" in their favor. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). However, if the party moving for summary judgment has failed to timely answer the complaint, the non-movant can "point[ ] to 'admissions on file' to support his allegations." *Modrowski*, 712 F.3d at 1170 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). This is because the Federal Rules of Civil Procedure say that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answer to interrogatories, and *admissions* on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

[1] This Court struck Oak Park's Answer to the SAC because Oak Park filed it eight months after the Court's deadline with no explanation, causing considerable prejudice to Barwin. (Dkt. 136).

Fed.R.Civ.P. 56(c) (emphasis added). There is a distinction between relying on the *allegations* in the complaint (which is insufficient to survive an opponent's motion for summary judgment) and relying on the defendant's *admission* of those allegations. Barwin has done the latter.

The Court therefore finds that all factual allegations in the SAC have been admitted, and Barwin may cite those admissions as the source of a Rule 56.1 statement of uncontested material fact. Where the SAC is cited as the source of such a statement of fact, it will be deemed uncontested.

One final note, the Court need not accept legal conclusions asserted in the SAC as true. *See Charter Bank & Trust of Illinois v. Edward Hines Lumber Co.*, 233 Ill.App.3d 574, 579 (1992) ("A party is not bound by admissions regarding conclusions of law, since it is the province of the trial court to determine, based upon properly admitted evidence, the legal effect of the facts adduced"); *see also Rosenbaum v. Seybold*, No. 06 CV 352, 2013 WL 633284, at *7 (N.D. Ind. Feb. 20, 2013) (when a party fails to answer the complaint it "does not admit to mere conclusions of law.").

### III. Background

In 2006 Barwin was hired by the Oak Park Board of Trustees as the Village Manager.[2] (Dkt. 125, ¶ 5). During the hiring process, Barwin expressed concern about qualifying for an Illinois municipal employee's pension as he had spent many years

---

[2] Unless otherwise noted, the facts in this section are not disputed. Where a specific paragraph from either party's Rule 56.1 statement of undisputed material facts (Dkt. 125 & Dkt. 128) or statement of additional undisputed material facts (Dkt. 138 and Dkt. 141) *not* derived from the SAC is cited, the Court has considered both the statement of fact and the opposing party's corresponding response.

4

working as a City Manager in Michigan. (Dkt. 128, ¶¶ 3–4). President of the Board of Trustees, David Pope, told him verbally that in the past five other employees, including the outgoing Village Manager, had been allowed to purchase out-of-state pension credits in order to qualify for full pensions. (Dkt. 128, ¶¶ 4, 5). Upon hiring, Barwin became a member of the Illinois Municipal Retirement Fund ("IMRF"), and both he and the Village made regular contributions to the IMRF pension fund. (Dkt. 125, ¶ 10). Barwin's position was at-will and formalized in an Employment Agreement between Barwin and Oak Park. (Dkt. 125, ¶¶ 6–8).

In 2012 the Board of Trustees asked Barwin to resign as Village Manager and told him that if he did not resign, the Board would vote to terminate his employment.[3] (Dkt. 125, ¶ 16). At that time Barwin had been employed by Oak Park for just over five years. (Dkt. 125, ¶ 23). Unless an employee purchases out-of-state pension credits, IMRF pensions require eight years' employment to vest. (Dkt. 125, ¶ 22). Before signing a severance agreement, Barwin asked Oak Park to authorize him to purchase pension credits to allow his pension to vest.[4] (Dkt. 125, ¶ 20). The Board refused and Barwin sued Oak Park for breach of contract. (Dkt. 125, ¶ 29).

In 2012, when Barwin requested to purchase credits, it had been eleven years since an employee had requested authorization to purchase pension credits. (Dkt. 125, ¶ 35). That request was made by the previous Village Manager in 2001 and was

---

[3] The parties disagree about why Barwin was asked to resign, but this disagreement is immaterial to the case at bar.

[4] According to Illinois statute, the governing body that employs the IMRF enrollee (here the Board of Trustees) must authorize the purchase of pension credits. 40 ILCS 5/7-139(a)(6).

5

granted. (*Id.* at ¶ 36). No requests were made during Barwin's tenure. (Dkt. 138, ¶ 7). Prior to 2001 (on unknown dates and seemingly over the course of decades), Oak Park had approved four similar requests made by Village employees. (Dkt. 128, ¶¶ 4, 5, 43). The record contains no evidence that Oak Park had ever denied an employee's request to purchase pension credits until it denied Barwin's request. *Id.* Since Barwin's departure in 2012 up until 2020, no Oak Park employee has been authorized to purchase out-of-state pension credits. (Dkt. 125, ¶ 38).

The Court dismissed Barwin's original complaint, which relied on a theory of promissory estoppel. (Dkt. 19, 10). Barwin's First Amended Complaint asserted Oak Park breached his employment contract by terminating him with an "improper motive"—to deny him pension benefits. (Dkt. 44, 10). The Court dismissed this theory because there was "no contract language indicating that Barwin is entitled to his pension two and a half years before it vests." (Dkt. 91, 13). Calling it a "close call" the Court allowed Barwin to file the present theory—that Oak Park had breached Section 19 of the Employment Agreement.[5] *Id.* at 19. Section 19 of the Employment Agreement states in relevant part that:

> Except as otherwise provided in this agreement, the employee shall be entitled to the highest level of benefits that are enjoyed by other department heads or equivalent-level employees of the employer as provided in the Oak Park Village Code, Personnel Rules and Regulations or by practice.

(Dkt. 125, ¶ 30).

---

[5] In allowing this final theory, the Court noted its concern with the procedural posture of the case, which had been dormant for several years. *Id.* at 16.

6

IV. Analysis

The parties agree that there are no questions of fact for a jury to decide and have filed cross motions for summary judgment.[6] Because the Court is sitting by diversity, it will apply Illinois law.[7] *See R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 941 (7th Cir. 2020) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

**A. Defendant's Motion for Summary Judgment**

*1. Language in the Employment Agreement is unambiguous*

The parties agree that "when contractual terms are unambiguous, the terms are to be given their plain meaning." *Empress Casino Joliet Corp. v. W.E. O'Neil Const. Co.*, 2016 IL App (1st) 151166, ¶ 62 (1st Dist. 2016). The parties dispute the meaning of two phrases: "are enjoyed by" and "by practice."

Oak Park asserts that because "are enjoyed by" is in the present tense, Barwin was only entitled to "benefits that other employees are currently enjoying [at the time of his request], not benefits that 'had been' enjoyed or granted to others in the past." (Dkt. 137, 2; Dkt. 124, 6). Barwin counters that although "are" is in the present tense, "enjoyed" is in the past tense, and argues this means the Court should consider the

---

[6] Barwin argues that whether Oak Park had a practice of granting pension credits is a question of fact, and that Oak Park admitted the fact by failing to answer the SAC. (Dkt. 128, ¶ 42). The Court disagrees. Whether authorizing the purchase of pension credits was a "practice" for purposes of the Employment Agreement is a legal question not a factual one. *See Farm Credit Bank v. Whitlock*, 144 Ill.2d 440, 447 (1991) ("If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law").

[7] Federal district courts interpreting contract disputes decide the law applicable to the contract using the choice-of-law rules of the state in which they sit. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97 (1941). Because neither party has asked the Court to apply the contract law of any state other than Illinois, the Court need not undertake this analysis.

7

benefits that employees were receiving before Barwin made his request. Oak Park is correct, grammatically. The phrase "are enjoyed by" is in the present tense and the passive voice (hence "enjoyed"), not the past tense.[8] The present tense "are enjoyed by" limits the span of time that a reasonable reader may examine in order to determine the "practice."

A "practice" is, as both parties agree, "repeated" over time. The word "practice" is not defined in the Employment Agreement. Barwin cites an outdated edition of Black's Law Dictionary, which defines "practice" as, among other things, a "succession of acts of a similar kind."[9] (Dkt. 127, 12) (citing Black's Law Dictionary (6th ed. 1991)). This is no longer how Black's Law Dictionary defines "practice,"[10] nor is it how Black's Law Dictionary defined "practice" in 2006.[11] But these various definitions do not conflict. Oak Park relies on the current edition of Merriam Webster's Dictionary, defining "practice" as a "repeated or customary action" or the "usual way of doing something." (Dkt. 124, 7). Barwin agrees with Oak Park's definition, saying: "Defendant defines 'practice' to mean 'repeated or customary action' or the 'usual way of doing something.' 'Repeated', 'customary' and 'usual'

---

[8] The past tense passive voice construction would be "were enjoyed by."

[9] This edition also defines "practice" as "[r]epeated or customary action; habitual performance; a succession of acts of a similar kind; custom; usage." Black's Law Dictionary (6th ed. 1991).

[10] The current definition of "practice" in Black's Law Dictionary is: 1. The procedural methods and rules used in a court of law. [. . .] 2. PRACTICE OF LAW. [. . .] 3. **An established custom or prescribed usage**. [. . .] 4. **A customary action or procedure**, esp. in the conduct of litigation. [. . .] 5. The act or process of accomplishing something; the actual application of knowledge through performance. [. . .]. 6. The frequent exercise of a skill for purposes of perfecting technique or performance." Black's Law Dictionary (11th ed. 2019) (emphasis added to relevant definitions).

[11] In 2006 Black's Law Dictionary defined "practice" only as "[t]he procedural methods and rules used in a court of law." Black's Law Dictionary (8th ed. 2005).

8

demonstrate that 'practice' looks back at what has been done and whether it has been done consistently. *Plaintiff agrees with these definitions.*" (Dkt. 140, 12) (emphasis added).

All that remains is for the Court to decide whether the uncontested facts conform to this uncontested definition. Over the course of decades (the record does not show *how many* decades) five Oak Park employees were permitted to purchase out-of-state pension credits. The record provides the date for only one such instance, which was in 2001, five years before Barwin was hired and over a decade before he requested pension credits. Despite the fact that the last Village Manger was authorized to purchase pension credits and Oak Park has apparently never denied such a request before Barwin's, the Court cannot find that this is "customary" or "usual" enough to constitute a "practice." Barwin has provided no case law suggesting the Court should hold otherwise.

This plain reading of "practice" is also supported by the principle that it would be "contrary to the effective administration of a political subdivision to allow elected officials to tie the hands of their successors with respect to decisions regarding the welfare of the subdivision." *Grassini v. DuPage Twp.*, 279 Ill. App. 3d 614, 619–20 (Ill. App. Ct. 1996). Oak Park relies on *Grassini* and its progeny,[12] arguing that "the

---

[12] In *Grassini*, a town employee who was given a four-year employment contract by the outgoing Board of Trustees was immediately fired by the new Board of Trustees following an election. *Id*. at 617. In voiding the contract, the Appellate Court explained that municipalities do not have the legal authority to enter into employment contracts that extend beyond the terms of their elected officials. *Grassini* specifically exempted "at-will" employment contracts because subsequent Boards have discretion over at-will employees. *Id*.; *see also Vill. of Oak Lawn v. Faber*, 378 Ill. App. 3d 458, 473 (2007) ("the problem with contracting beyond the term of the existing governing body is that the new body will be unable to make the decisions and use the discretion for which it was elected. This problem was never a risk under the agreements in this case because [plaintiff] was always terminable at will."). While *Grassini*

9

basic principle that a municipal body cannot perpetually bind itself based on actions or decisions of a previously elected municipal board must be considered in interpreting the relevant contract language." (Dkt. 142, 5). The Court agrees. Oak Park did not expressly bind itself to provide pension credits when it signed the Employment Agreement. Both parties agreed to broad language that countenanced possible changes in practices ("the highest level of benefits that are enjoyed by other department heads or equivalent-level employees of the employer as provided by [. . .] practice"). But Oak Park was not bound by a single act allowed by a Board of Trustees a decade earlier. For this Court to hold otherwise would violate the spirit if not the letter of *Grassini* and its progeny.

In light of the Court's ruling on the meaning of the unambiguous contract terms, the Court need not address Barwin's argument that Oak Park, by "arbitrarily halting its practice of allowing Village managers and department heads to buy pension credits," (Dkt. 127, 9). The term "practice" in the Employment Agreement did not encompass allowing Barwin to purchase pension credits.

*2. Employment Agreement's Integration Clause*

The Employment Agreement contains an integration clause stating that "any prior discussions or representations by or between the [Oak Park] and [Barwin] not specifically stated in this Agreement are rendered null and void by this Agreement". (Dkt. 138 Ex. 2, § 21). It is well-settled in Illinois that "where parties formally include an integration clause in their contract, they are explicitly manifesting their intention

---

does not govern a dispute about the benefits owed to an at-will employee like Barwin while he is still employed, it is instructive.

10

to protect themselves against misinterpretations which might arise from extrinsic evidence." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 636-37 (7th Cir. 2007). *See Air Safety Inc. v. Teachers Realty Corp.*, 185 Ill.2d 457, 466 (1999) (where an unambiguous contract contains an integration clause, courts do not consider extrinsic evidence in interpreting the contract).

This renders several of the parties' arguments regarding the contract negotiations moot. Oak Park attempts to underscore its arguments by asserting that the relevant contractual language was derived from a form contract which Barwin, not Oak Park, proposed. (Dkt. 142, 6). Barwin, on the other hand, asserts that the President of the Board of Trustees, David Pope, assured him orally that in the past five other employees, including the outgoing Village Manager, had been allowed to purchase out-of-state pension credits in order to qualify for full pensions. (Dkt. 128, ¶¶ 4, 5). Barwin implies that he relied on these conversations. The Court is not permitted to consider (and need not consider) these arguments to determine the meaning of the terms "are enjoyed by" or "practice".

**B. Plaintiff's Motion for Summary Judgment**

*1. Prior Ruling of the Court*

Barwin relies on the law of the case doctrine and asserts that because the Court found that his "Second Amended Complaint alleged a 'plausible breach of contract theory' sufficient to proceed" (Dkt. 127, 9 citing Dkt. 91, 20 and *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995), and the factual contents of his Second Amended Complaint have been deemed admitted, the Court is required to

11

rule in his favor in his motion for summary judgment. This is misguided and unpersuasive. The Court's decision to allow an amended complaint under Fed. R. Civ. P. 15 in no way guarantees success on the merits. Although the Court found Barwin alleged a plausible theory of liability in his proposed SAC and the facts in that Complaint have been admitted, the legal conclusions in that SAC were not admitted. The Court's earlier ruling allowing Barwin to file an amended complaint does not require, or even suggest, that Barwin should be granted summary judgment.

2. *Covenant of Good Faith and Fair Dealing*

Barwin's principal argument is that by declining to grant him pension credits, Oak Park violated the implied covenant of good faith and fair dealing in his employment agreement. Barwin argues that he was forced to resign in 2006 because his pension was scheduled to vest two and a half years later, and Oak Park did not want to pay the costs associated with that vesting. (Dkt. 127, 4). Relatedly, he points out that Oak Park violated its own internal procedures and Illinois' Open Meetings laws when it fired him.[13] This argument is unavailing; the Board's actions do not change how the Court interprets his Employment Agreement, specifically whether "practice" included authorizing the purchase of pension credits.

Although the implied covenant of good faith and fair dealing may be "an aid in construing a contract under Illinois law," it "does not create an independent cause of action." *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013) citing

---

[13] Oak Park contests some of these assertions but has admitted others by failing to answer the SAC. For purposes of deciding this motion the Court assumes all Barwin's assertions are true. Oak Park's conduct does not change the plain language of the employment agreement.

12

*Voyles v. Sandia Mortgage Corp.*, 196 Ill.2d 288, 295 (2001). "Nor does it permit a party to enforce an obligation [that is] not present in the contract." *Id*. The terms of Barwin's Employment Agreement are unambiguous and did not require Oak Park to authorize the purchase of pension credits.

Barwin provides three cases to support his claim that Oak Park's refusal to authorize the purchase of pension credits results in a violation of "good faith and fair dealing." The first, decided thirty years ago by the Nevada state supreme court, suggested that firing a tenured (rather than at-will) employee in order to deprive him of his pension constituted a *tort* of "bad faith discharge." *KMart Corp. v. Ponsock*, 103 Nev. 39, 48 (1987), abrogated on other grounds by *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990). While this Nevada tort "finds its origins in the so-called covenant of good faith and fair dealing implied in law in every contract," the breach of contract claim in that case was based on express terms of the employment contract. *Id. KMart* provides no support for Barwin's position.

The second, *Reserve at Woodstock, LLC v. City of Woodstock*, 2011 Ill.App.2d 100676, (2nd Dist. 2011), provides no stronger support for Barwin's position. There an Illinois appellate court found that two paragraphs of a real estate development contract were in conflict and the court used the implied covenant of good faith and fair dealing "as a construction aid" to harmonize the paragraphs and determine what the actual rights and duties of the parties were. *Id*. at ¶ 41. The *Woodstock* court determined that, because the conflicting contract language made it unclear whether the city had the right to rezone the property to the detriment of the developer, the

13

fact that they had waited years to do so while the developer invested time and resources into the project suggested a breach of contract. Barwin's Employment Agreement does not contain conflicting passages concerning pension rights, and the Court does not need to employ the implied covenant of good faith and fair dealing to interpret the meaning of the contract. Instead, "when interpreting a contract, the [Court's] primary objective is to effectuate the intent of the parties," and "a court will first look to the language of the contract itself to determine the parties' intent." *Woodstock*, 2011 Ill.App.2d at ¶ 39. As the *Woodstock* court notes, "if the words in the contract are clear and unambiguous, they must be given their plain, ordinary, and popularly understood meaning, [and a] contract is not ambiguous merely because the parties disagree on its meaning; ambiguity exists where language is obscure in meaning through indefiniteness of expression." *Id.* (citations omitted).

The third case, *McCleary v. Wells Fargo Sec., L.L.C.*, 2015 IL App (1st) 141287, ¶ 3, is also distinguishable. There a former employee sued over the denial of a bonus. The language governing bonuses said, in relevant part, (1) that the award of bonuses was fully "discretionary," (2) that a former employee who had worked for at least "three months" of the last year "may be considered for a prorated award" after their termination, and (3) that no amendments to the terms of the plan "shall adversely affect a [p]articipant's earned award under the Plan prior to the effective date of the amendment [. . .] unless otherwise agreed to by the [p]articipant." *Id.* at ¶¶ 5–7. The plaintiff argued that his former employer's actions constituted a breach of contract both because their discretion was cabined by the implied covenant of good faith and

14

fair dealing, and because their actions violated an express term of the bonus plan: "the [express] prohibition on unannounced and retroactive amendments." *Id*. at ¶ 10.

In denying a motion to dismiss, the court relied on the implied covenant of good faith and fair dealing in two ways. First, the court relied on the implied covenant to harmonize two conflictual terms in a contract; one that allowed discretion, and one that forbade retroactive changes. In the instant case there is no conflict within the four corners of the contract, so this part of the holding is inapplicable. Second, the *McCleary* court noted that "[w]here a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised 'reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.'" *Id*. at ¶ 19 (citations omitted). The court found "plaintiff sustains a cause of action for breach of contract for abuse of discretion based on a violation of the implied covenant of good faith and fair dealing by alleging that defendant exercised its discretion in a manner contrary to the reasonable expectations of the parties." *Id*. at ¶ 21. Barwin relies on this language to argue that the word "practice" gave Oak Park discretion, and that their change in the "practice" violated his reasonable expectations, which were to receive pension credits as Trustee Pope had suggested he could before he was hired.

The Court is not convinced. First, unlike *McCleary*, Barwin's contract did not give Oak Park unlimited discretion to provide benefits. Oak Park was *required* to provide the same benefits it provided to others as a matter of practice. As already

15

described, Oak Park did not have a "practice" of authorizing the purchase of pension credits. Second, because Barwin's Employment Agreement contained an integration clause, he could only have the "reasonable expectation" of receiving the benefits described therein. The implied covenant of good faith and fair dealing does not give the Court license to go beyond the four corners of the contract and consider extrinsic evidence in determining what those reasonable expectations might be. *See, e.g. RBS Citizens, Nat. Ass'n v. RTG-Oak Lawn, LLC*, 407 Ill. App. 3d 183, 191 (2011) (cited approvingly in *McCleary*, holding that "deliberately creating ambiguity" before creation of a contract did not give rise to breach of implied covenant of good faith and fair dealing, and that where terms are unambiguous reasonable expectations were not violated); *see also, e.g., Northern Trust Co. v. VIII S. Michigan Assocs.*, 276 Ill. App. 3d 355, 367 (1995) (cited approvingly in *McCleary*, holding that "[t]he obligation of good faith and fair dealing is essentially used to determine the intent of the parties where a contract is susceptible to two conflicting constructions [and that] an implied covenant of good faith cannot overrule or modify the express terms of a contract."). Barwin's motion for summary judgment is denied.

## V. Conclusion

Plaintiff's motion for summary judgment (Dkt. 126) is denied and Defendant's motion for summary judgment (Dkt. 123) is granted. The Clerk is directed to enter judgment in favor of Defendant Oak Park. Civil case terminated.

E N T E R:

Dated: April 30, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge